OPINION
{¶ 1} Defendant, Dontae Gardner, appeals from his conviction and sentence for aggravated robbery.
 {¶ 2} On May 20, 2004, at 5:30 p.m., Kea Peavy, Stephen Parker, and the store manager, Tim Kristopherson, were all working at the Shoe Warehouse at 4026 N. Main Street in Harrison Township. Two African-American males entered the store carrying guns and demanded money. Each man wore partial gloves and a partial face mask that covered only the bottom half of his face. Both robbers carried guns. One had a revolver and the other man had a semi-automatic.
 {¶ 3} Kea Peavy recognized both of the men because she went to high school with them. She recalled that one man's last name was Daniels, although Peavy could not remember his first name. The other man she knew to be Defendant, Dontae Gardner. Peavy had seen Defendant just two weeks earlier when he came into the store. She also knows that Defendant usually drives a silver or gray Ford Taurus.
 {¶ 4} Daniels pointed his gun at Tim Kristopherson's neck and told him to go behind the counter and give him all the money in the cash register. Kristopherson complied, and Daniels put the money into a pillowcase. Meanwhile, Defendant acted as a lookout while holding a gun in his hand.
 {¶ 5} After the two men fled the store following the robbery, Peavy called 911, and then all three store employees ran outside to see if they could locate the robbers. They observed a gray or silver Ford Taurus about fifty yards away, leaving very abruptly with its tires squealing.
 {¶ 6} When police arrived Peavy identified the robbers as Dontae Gardner and a man named Daniels. Tim Kristopherson described the robbers' appearance. One man wore a red hat and red "do-rag" on his face and carried a semi-automatic handgun. The other man wore a black scarf on his face and carried a revolver.
 {¶ 7} The following day, May 21, 2004, Kea Peavy was interviewed by Detective Hutchison of the Montgomery County Sheriff's office. By that time Peavy had looked through her high school yearbook and discovered that Daniels' first name was Eric. Peavy provided that information to Detective Hutchison. After looking at two photo spreads Detective Hutchison had prepared, one containing a photograph of Eric Daniels and the other containing a photograph of Defendant Gardner, Peavy identified Defendant and Eric Daniels as the two robbers.
 {¶ 8} Defendant was indicted on one count of aggravated robbery, R.C. 2911.01(A)(1), with a three year firearm specification attached, R.C. 2941.145. On March 7-8, 2005, the case was tried to a jury. The State offered the testimony of the store employees, including Kea Peavy's testimony identifying Defendant Gardner as one of the two robbers. Defendant offered the testimony of his two close friends, his girlfriend, and his own testimony to establish his alibi that at or near the time of this robbery Defendant was having his hair braided by his girlfriend at a friend's grandmother's house. The jury found Defendant guilty of aggravated robbery but not guilty of the firearm specification. The trial court sentenced Defendant to a four year prison term.
 {¶ 9} Defendant timely appealed to this court from his conviction and sentence. He presents three assignments of error, which will be considered in an order that facilitates our discussion of them.
FIRST ASSIGNMENT OF ERROR
 {¶ 10} "THERE WAS INSUFFICIENT EVIDENCE TO CONVICT APPELLANT OF AGGRAVATED ROBBERY."
 {¶ 11} Defendant was found guilty of violating R.C.2911.01(A)(1), which provides:
 {¶ 12} "No person, in attempting or committing a theft offense, as defined in section 2913.01 of the Revised Code, or in fleeing immediately after the attempt or offense, shall do any of the following:
 {¶ 13} "Have a deadly weapon on or about the offender's person or under the offender's control and either display the weapon, brandish it, indicate that the offender possesses it, or use it."
 {¶ 14} Defendant argues that the State failed to prove aggravated robbery because the evidence was insufficient to prove that he had a gun on or about his person during this theft offense. Defendant bases his argument upon the fact that the jury found him not guilty of the firearm specification, R.C. 2941.145, attached to the aggravated robbery charge.
 {¶ 15} A sufficiency of the evidence argument challenges whether the State has presented adequate evidence on each element of the offense to allow the case to go to the jury or sustain the verdict as a matter of law. Thompkins, supra. The proper test to apply to such an inquiry is the one set forth in paragraph two of the syllabus of State v. Jenks (1991), 61 Ohio St.3d 259:
 {¶ 16} "An appellate court's function when reviewing the sufficiency of the evidence to support a criminal conviction is to examine the evidence admitted at trial to determine whether such evidence, if believed, would convince the average mind of the defendant's guilt beyond a reasonable doubt. The relevant inquiry is whether, after viewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt."
 {¶ 17} Kea Peavy recognized the two men who robbed the Shoe Warehouse and she identified them as Defendant, Dontae Gardner, and Eric Daniels. Peavy testified at trial that Daniels pointed his gun at Tim Kristopherson's neck and forced him to empty all of the money out of the cash register. While this was going on, Defendant acted as a lookout while holding a gun in his hand. Peavy testified that both men had guns, one had a semi-automatic and the other man had a revolver, but Peavy couldn't remember which man had what particular gun.
 {¶ 18} Peavy's testimony, if believed, is clearly sufficient to prove that Defendant had a gun on or about his person during this theft offense. Even if Peavy's testimony that Defendant had a gun is not believed, it remains apparent from her testimony that Eric Daniels, the principal offender, had a gun which he used in committing this theft offense, and that Defendant "aided and abetted" Daniels in committing the offense. That makes Defendant liable as if he were the principal offender. See: R.C.2923.03(F).
 {¶ 19} Viewing the evidence presented in a light most favorable to the State, as we must, a rational trier of facts could find all of the essential elements of aggravated robbery to have been proved beyond a reasonable doubt. The evidence is legally sufficient to sustain Defendant's conviction.
 {¶ 20} The first assignment of error is overruled.
THIRD ASSIGNMENT OF ERROR
 {¶ 21} "THE JURY VERDICT SHOULD BE REVERSED BECAUSE IT WAS AGAINST THE MANIFEST WEIGHT OF EVIDENCE."
 {¶ 22} A weight of the evidence argument challenges the believability of the evidence and asks which of the competing inferences suggested by the evidence is more believable or persuasive. State v. Hufnagle (Sept. 6, 1996), Montgomery App. No. 15563, unreported. The proper test to apply to that inquiry is the one set forth in State v. Martin (1983),20 Ohio App.3d 172, 175:
 {¶ 23} "[t]he court, reviewing the entire record, weighs the evidence and all reasonable inferences, considers the credibility of witnesses and determines whether in resolving conflicts in the evidence, the jury lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered." Accord: State v. Thompkins,78 Ohio St.3d 380, 1997-Ohio-52.
 {¶ 24} The credibility of the witnesses and the weight to be given to their testimony is a matter for the trier of facts to resolve. State v. DeHass (1967), 10 Ohio St.2d 230. In Statev. Lawson (August 22, 1997), Montgomery App. No. 16288, we observed:
 {¶ 25} "[b]ecause the factfinder . . . has the opportunity to see and hear the witnesses, the cautious exercise of the discretionary power of a court of appeals to find that a judgment is against the manifest weight of the evidence requires that substantial deference be extended to the factfinder's determinations of credibility. The decision whether, and to what extent, to credit the testimony of particular witnesses is within the peculiar competence of the factfinder, who has seen and heard the witness." Id., at p. 4.
 {¶ 26} This court will not substitute its judgment for that of the trier of facts on the issue of witness credibility unless it is patently apparent that the trier of facts lost its way in arriving at its verdict. State v. Bradley (Oct. 24, 1997), Champaign App. No. 97-CA-03.
 {¶ 27} In arguing that his conviction is against the manifest weight of the evidence, Defendant suggests that the testimony by the State's only eyewitness to this crime, Kea Peavy, is not worthy of belief in light of the contradictory testimony offered by Defendant and his witnesses that at the time this crime occurred Defendant was elsewhere. The credibility of the witnesses and the weight to be given to their testimony are matters for the trier of facts, the jury here, to resolve.DeHass, supra. The jury in this case did not lose its way simply because it chose to believe Peavy's version of the events rather than Defendant's, which it was entitled to do.
 {¶ 28} In reviewing this record as a whole we cannot say that the evidence weighs heavily against a conviction, that the jury lost its way in choosing to believe the State's witnesses, which it was entitled to do, or that a manifest miscarriage of justice occurred. Defendant's conviction is not against the manifest weight of the evidence.
 {¶ 29} The third assignment of error is overruled.
SECOND ASSIGNMENT OF ERROR
 {¶ 30} "THE TRIAL COURT ERRED IN ALLOWING INCONSISTENT VERDICTS TO BE RENDERED."
 {¶ 31} Defendant argues that the trial court erred in allowing inconsistent verdicts to be returned with respect to the jury's decision finding Defendant guilty of aggravated robbery in violation of R.C. 2911.01(A)(1) but not guilty of the firearm specification, R.C. 2941.145, attached to that charge.
 {¶ 32} This court, as well as other Ohio courts, have consistently held that a finding of guilty on a principal charge but not guilty on a specification attached to the charge does not render the verdict inconsistent and thus invalidate the guilty verdict on the principal charge, at least where legally sufficient evidence supports the guilty verdict on the principal charge. State v. Wilson (January 21, 1992), Clark Ap. No. 2803;State v. Talley (1993), Montgomery App. No. 136839; State v.Boyd (1996), 110 Ohio App.3d 13; State v. Woodson (1985),24 Ohio App.3d 143.
 {¶ 33} Inconsistency in a verdict does not arise out of inconsistent responses to different counts, but rather inconsistent responses to the same count. State v. Adams
(1978), 53 Ohio St.2d 223; State v. Lovejoy, 79 Ohio St.3d 440,1997-Ohio-371. A conviction for violating R.C. 2911.01(A)(1) does not require, and is not dependent on, any specification. The principal charge and the specification are not interdependent. Specifications are considered after and in addition to the finding of guilt on the principal charge. Accordingly, any determination as to the specification cannot change the finding of guilt on the principal charge. See: State v. Perryman
(1976), 49 Ohio St.2d 14.
 {¶ 34} Having previously determined that Defendant's conviction for aggravated robbery is supported by legally sufficient evidence, we adhere to the reasoning and holding in our prior decisions in Wilson, Talley, and Boyd. The not guilty verdict on the firearm specification does not create an inconsistent verdict that invalidates the guilty finding on the aggravated robbery charge.
 {¶ 35} The second assignment of error is overruled. The judgment of the trial court will be affirmed.
Wolff, J. and Donovan, J., concur.