JOURNAL ENTRY AND OPINION
{¶ 1} Appellant Thomas Ballard appeals his conviction for robbery. He assigns the following two errors for our review:
 "I. Appellant's conviction was based on insufficient evidence."
 "II. Appellant's conviction is against the manifest weight of the evidence."
 {¶ 2} Having reviewed the record and pertinent law, we affirm Ballard's conviction. The apposite facts follow.
 {¶ 3} Ballard was indicted on one count each of aggravated burglary, robbery, menacing by stalking, and domestic violence. Ballard entered a not guilty plea; the matter proceeded to a jury trial. After the State rested, the domestic violence charge was reduced to an aggravated assault charge.
 Jury Trial {¶ 4} Dyna Richardson and Ballard started dating in October of 1996. They had a tumultuous relationship until June 2005. At that point, Richardson was tired of Ballard's extreme jealously and ended the relationship. The two agreed to remain friends. The two continued to have interaction, which included Ballard helping Richardson with her adult special-needs son. Richardson stated that she and Ballard never lived together. *Page 3 
 {¶ 5} On the evening of November 27, 2005, Ballard accused Richardson of dating another man. The argument took place over the telephone until the early hours of November 28, 2005. Richardson, tired of Ballard's jealousy, decided to end the friendship. At that point, Ballard requested to come to Richardson's apartment to retrieve a duffle bag he had left there. When Ballard arrived, he continued to argue with Richardson and threatened to kill her if he found her with another man. He then abruptly left.
 {¶ 6} Shortly thereafter, Richardson prepared to leave for work. She turned to retrieve her coat, leaving the door open. As she turned back around, Ballard entered the apartment and placed her in a choke hold from behind. He then began to punch Richardson with a closed fist on the left side of her head. When Richardson fell to the floor, Ballard stomped and kicked her. He stated, "You see how easy it is for me to get you when I want to? You think I'm playing with you? You think I'm not serious? You know, I knew you was cheating. I know you lying."[1]
 {¶ 7} Ballard then grabbed Richardson's keys from her hand and fled the apartment. Richardson locked the door and ran to her patio where she yelled that Ballard had just beaten her and was stealing her car. She saw Ballard driving the car out of the parking lot. She then called 911 with the aid of the apartment's maintenance man. *Page 4 
 {¶ 8} Officer Schuttenberg responded to the call. He stated that Richardson was tearful when he arrived; he noted she had several red marks on her face. After making a report to the police, Richardson went to the hospital for treatment.
 {¶ 9} Ballard made several more threatening calls to Richardson, and eventually told her she could find her car parked at Randall Park Mall. Officers transported the vehicle back to the station and released it to Richardson.
 {¶ 10} Ballard denied physically assaulting Richardson. He also claimed he took the keys because he used the car previously without permission and helped her pay for the car. He also contended he was angry that Richardson refused to return a diamond ring he had given her several days previously. He admitted he had a prior domestic violence conviction, along with a menacing conviction, both with Richardson as the victim. He also has a previous aggravated burglary conviction where his father was the victim and an aggravated assault conviction where his friend was the victim.
 {¶ 11} The jury found Ballard guilty of robbery and not guilty of the remaining charges. The trial court sentenced Ballard to the minimum sentence of two years in prison.
 Insufficient Evidence {¶ 12} In his first assigned error, Ballard contends insufficient evidence was presented in support of his robbery conviction. We disagree. *Page 5 
 {¶ 13} The sufficiency of the evidence standard of review is set forth in State v. Bridgeman:[2]
 "Pursuant to Criminal Rule 29(A), a court shall not order an entry of judgment of acquittal if the evidence is such that reasonable minds can reach different conclusions as to whether each material element of a crime has been proved beyond a reasonable doubt."[3]
 {¶ 14} Bridgeman must be interpreted in light of the sufficiency test outlined in State v. Jenks,[4] in which the Ohio Supreme Court held:
 "An appellate court's function when reviewing the sufficiency of the evidence to support a criminal conviction is to examine the evidence submitted at trial to determine whether such evidence, if believed, would convince the average mind of the defendant's guilt beyond a reasonable doubt. The relevant inquiry is whether, after viewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt. (Jackson v. Virginia [1979], 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560, followed.)"
 {¶ 15} Ballard was convicted of robbery, in violation of R.C.2911.02(A)(2), which
 {¶ 16} provides that "no person, in attempting or committing a theft offense or in fleeing immediately after the attempt or offense, shall * * * inflict, attempt to inflict, or threaten to inflict physical harm on another." Ballard contends that because the jury *Page 6 
acquitted him of assault the verdict finding him guilty of robbery while threatening or inflicting physical harm was inconsistent.
 {¶ 17} Consistency between verdicts on several counts of an indictment is unnecessary where the defendant is convicted on one or some counts and acquitted on others; the conviction generally will be upheld irrespective of its rational incompatibility with the acquittal.[5]
Each count of a multi-count indictment is deemed distinct and independent of all other counts, and thus inconsistent verdicts on different counts do not justify overturning a verdict of guilt.[6]
"The sanctity of the jury verdict should be preserved and should not be upset by speculation or inquiry into such matters to resolve the inconsistency."[7]
 {¶ 18} Moreover, the jury, convinced that defendant was guilty of robbery, may have acquitted defendant of assault based on compromise or leniency.[8] An appellate court is not permitted to speculate about the reason for the inconsistency when it determines the validity of a verdict; therefore, we will not undermine the jury's *Page 7 
verdict in this case. Also, Ballard contends the evidence fails to show he stole the car. He claims the reason he did not return the car was because there was a warrant out on him. He also contends the fact the jury acquitted him of the menacing charge indicates the jury did not believe Richardson's testimony. Richardson testified that Ballard took the car without her permission. This was sufficient evidence to support the fact Ballard committed a theft offense pursuant to the robbery statute. Accordingly, Ballard's first assigned error is overruled.
 Manifest Weight of the Evidence {¶ 19} In his second assigned error, Ballard contends his conviction was against the manifest weight of the evidence. We disagree.
 {¶ 20} When the argument is made that the conviction is against the manifest weight of the evidence, the appellate court is obliged to consider the weight of the evidence, not its mere legal sufficiency. The defendant has a heavy burden in overcoming the fact finder's verdict. As the Ohio Supreme Court held in State v. Thompkins:[9]
 "Weight of the evidence concerns `the inclination of the greater amount of credible evidence, offered in a trial, to support one side of the issue rather than the other. It indicates clearly to the jury that the party having the burden of proof will be entitled to their verdict, if, on weighing the evidence in their minds, they shall find the greater amount of credible evidence sustains the issue which is to be established before them. *Page 8 
 Weight is not a question of mathematics, but depends on its effect in inducing belief.' Blacks, supra, at 1594.
 "* * * The court, reviewing the entire record, weighs the evidence and all reasonable inferences, considers the credibility of witnesses and determines whether in resolving conflicts in the evidence, the jury clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered. The discretionary power to grant a new trial should be exercised only in the exceptional case in which the evidence weighs heavily against the conviction."
 {¶ 21} Ballard contends that Richardson alleged that he physically assaulted her in an attempt to rid him from her life. He contends the fact the jury found him not guilty of aggravated burglary indicates the jury believed that Ballard lived with Richardson in spite of her contentions otherwise, and the jury's acquitting him of menacing also indicates they did not believe her testimony regarding his threatening phone calls.
 {¶ 22} As we stated above, an appellate court cannot speculate regarding why the jury decided to find Ballard not guilty of some of the charges, as it could merely reflect leniency on the part of the jury.
 {¶ 23} In addition, although Ballard contends Richardson lied regarding the physical assault in order to rid him from her life, on credibility issues we must defer to the trier of fact. The trier of fact is in the best position to observe the witness' demeanor, voice inflection, and mannerisms in determining each witness' credibility.[10] In the instant case, the jury heard the testimony of Richardson and *Page 9 
Ballard and chose to believe Richardson's account of the robbery. Accordingly, Ballard's second assigned error is overruled.
Judgment affirmed.
It is ordered that appellee recover from appellant its costs herein taxed.
The court finds there were reasonable grounds for this appeal.
It is ordered that a special mandate be sent to said court to carry this judgment into execution. The defendant's conviction having been affirmed, any bail pending appeal is terminated. Case remanded to the trial court for execution of sentence.
A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.
PATRICIA ANN BLACKMON, JUDGE
ANTHONY O. CALABRESE, JR., P.J., and MELODY J. STEWART, J., CONCUR
[1] Tr. at 142-143.
[2] (1978), 55 Ohio St.2d 261, syllabus.
[3] See, also, State v. Apanovitch (1987), 33 Ohio St.3d 19, 23;State v. Davis (1988), 49 Ohio App.3d 109, 113.
[4] (1991), 61 Ohio St.3d 259, paragraph two of the syllabus.
[5] State v. Adams (1978), 53 Ohio St.2d 223, 374, vacated in part on other grounds, 439 U.S. 811, 58 L.Ed.2d 103, 99 S.Ct. 69.
[6] See State v. Hicks (1989), 43 Ohio St.3d 72, 78; State v.Brown (1984), 12 Ohio St.3d 147, paragraph one of the syllabus;State v. Washington (1998), 126 Ohio App.3d 264, 276.
[7] State v. Lovejoy (1997), 79 Ohio St.3d 440, 444,1997-Ohio-371.
[8] United States v. Powell (1984), 469 U.S. 57, 68; State v.Bundy, 7th Dist. No. 02 CA 211, 2005-Ohio-3310; State v.Fraley, 5th Dist. No. 03 CA 12, 2004-Ohio-4898; City ofBrecksville v. Malone (Feb. 17, 2000), Cuyahoga App. No. 75466 75651;State v. Smith (Nov. 6, 1997), Cuyahoga App. Nos. 69799, 70451, 71643.
[9] 78 Ohio St.3d 380, 386-387, 1997-Ohio-52.
[10] State v. DeHass (1967), 10 Ohio St.2d 230, paragraph one of the syllabus. *Page 1