[Cite as *State v. Frazier*, 2011-Ohio-434.]

COURT OF APPEALS
STARK COUNTY, OHIO
FIFTH APPELLATE DISTRICT


| | |
|---|---|
| STATE OF OHIO | JUDGES:<br>Hon. Julie A. Edwards, P. J. |
| Plaintiff-Appellee | Hon. Sheila G. Farmer, J.<br>Hon. John W. Wise, J. |
| -vs- | Case No. 2010 CA 00042 |
| JOHN WESLEY FRAZIER | |
| Defendant-Appellant | O P I N I O N |


CHARACTER OF PROCEEDING:     Criminal Appeal from the Court of Common
                             Pleas, Case No. 2009 CR 01024(A)


JUDGMENT:                    Affirmed


DATE OF JUDGMENT ENTRY:      January 31, 2011


APPEARANCES:

For Plaintiff-Appellee                  For Defendant-Appellant

JOHN D. FERRERO                         GEORGE URBAN
PROSECUTING ATTORNEY                    111 Second Street, NW
RONALD MARK CALDWELL                    Suite 302
ASSISTANT PROSECUTOR                    Canton, Ohio  44702
110 Central Plaza South, Suite 510
Canton, Ohio  44702-1413

*Wise, J.*

{¶1} Appellant John Wesley Frazier appeals from his convictions for murder and aggravated robbery in the Court of Common Pleas, Stark County. The relevant facts leading to this appeal are as follows.

{¶2} On June 22, 2009, appellant's friend Mike Strychalski inquired of Canton resident Raymond Pyles about purchasing some marijuana. Strychalski and Pyles set up a date and time for the transaction. Strychalski also met with appellant, at which time the two young men discussed robbing Pyles during the drug deal.

{¶3} On the next day, Pyles and his friend, Jesse Burns, drove a Toyota SUV to a small playground in the Vienna Woods neighborhood in southwest Canton to complete the drug deal. Appellant, standing with Strychalski at the passenger side window of the truck, produced a handgun and demanded any money and valuables from Pyles and Burns. After Pyles and Burns had turned over their cash, marijuana, and cell phones, a physical struggle ensued between Burns and appellant, following which Burns was fatally shot in the head.

{¶4} Appellant, who was a minor at the time, was thereafter bound over from juvenile court and indicted as an adult on one count of aggravated murder and two counts of robbery, all with firearm specifications.

{¶5} The case proceeded to a jury trial. On January 27, 2010, the jury found appellant guilty of the lesser included offense of murder, and guilty of two counts of aggravated robbery. Appellant was sentenced on February 10, 2010 to an aggregate indeterminate sentence of thirty-one years to life in prison.

{¶6}     On February 23, 2010, appellant filed a notice of appeal. He herein raises the following three Assignments of Error:

{¶7}     "I.   THE TRIAL COURT'S FINDING OF GUILT IS AGAINST THE MANIFEST WEIGHT AND SUFFICIENCY OF THE EVIDENCE.

{¶8}     "II.   THE TRIAL COURT'S (SIC) ERRED IN FAILING TO DECLARE A MISTRIAL ON THE BASIS OF INCONSISTENT VERDICT BY THE JURY.

{¶9}     "III.   THE APPELANT (SIC) WAS DEPRIVED OF DUE PROCESS OF [LAW] BY THE MISCONDUCT OF THE PROSECUTOR."

I.

{¶10}     In his First Assignment of Error, appellant maintains his conviction was against the sufficiency and manifest weight of the evidence. We disagree.

{¶11}     In reviewing a claim of insufficient evidence, "[t]he relevant inquiry is whether, after viewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt." *State v. Jenks* (1991), 61 Ohio St.3d 259, 574 N.E.2d 492, paragraph two of the syllabus. It is well-established that a jury is free to believe all, part, or none of any witness' testimony. See *State v. Mossburg*, Van Wert App.No. 15-06-10, 2007-Ohio-3343, ¶ 46, citing *State v. Antill* (1964), 176 Ohio St. 61, 197 N.E.2d 548.

{¶12}     Appellant herein was convicted of one count of murder and two counts of aggravated robbery.

{¶13}     R.C. 2903.02(A) states in pertinent part: "No person shall purposely cause the death of another * * *."

{¶14} In addition, R.C. 2911.01(A)(1) states as follows: "No person, in attempting or committing a theft offense, as defined in section 2913.01 of the Revised Code, or in fleeing immediately after the attempt or offense, shall * * * [h]ave a deadly weapon on or about the offender's person or under the offender's control and either display the weapon, brandish it, indicate that the offender possesses it, or use it[.]"

{¶15} The bulk of appellant's argument goes to the evidence concerning the shooter's identity, which we will additionally analyze in regard to appellant's "manifest weight" claim. Nonetheless, the record reveals that both Strychalski and Pyles observed appellant produce a handgun during the staged drug deal and demand "everything" from Pyles and Burns in the SUV. Pyles described how he started to give chase in the vehicle after Strychalski ran off toward home, while appellant and Burns wrestled over the gun outside the SUV. Pyles then heard a gunshot and saw Burns sitting on the ground, bleeding. Furthermore, David Taylor, who was given a ride by Strychalski and appellant shortly after the shooting, heard appellant, who appeared upset and cursing, state "I didn't mean to shoot him in the head." Taylor also observed appellant wrap a handgun into a T-shirt as Strychalski drove up Dueber Avenue during this time.

{¶16} We note the State also presented deputy coroner testimony that the cause of Burns' death was a gunshot wound to the top of the skull, which penetrated into the brain. Criminalist Michael Short opined that the deadly shot had the characteristics of a Smith and Wesson .357 or .38 fired at close range to the victim. No shell casings were found at the scene, although Canton Detective Joseph Mongold testified that if the weapon had indeed been a revolver, the casings would not have been ejected.

**{¶17}** Accordingly, upon review of the trial court record in a light most favorable to the prosecution, we hold appellant's convictions for murder and aggravated robbery were supported by sufficient evidence.

**{¶18}** Turning to the second portion of this assigned error, we note our standard of review on a manifest weight challenge to a criminal conviction is stated as follows: "The court, reviewing the entire record, weighs the evidence and all reasonable inferences, considers the credibility of witnesses and determines whether in resolving conflicts in the evidence, the jury clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered." *State v. Martin* (1983), 20 Ohio App.3d 172, 175, 485 N.E.2d 717. See also, *State v. Thompkins* (1997), 78 Ohio St.3d 380, 678 N.E.2d 541. The granting of a new trial "should be exercised only in the exceptional case in which the evidence weighs heavily against the conviction." *Martin* at 175, 485 N.E.2d 717.

**{¶19}** The focus of appellant's manifest weight claim is on alleged inconsistencies in the testimony and credibility of the witnesses as to the perpetrator of the robbery and shooting.

**{¶20}** The record consistently reveals that Strychalski was the person who chiefly arranged the details of the drug transaction ruse to effectuate a robbery of Pyles. Strychalski admitted to having access to a handgun, which had previously belonged to a deceased friend. He also admitted to pointing the gun at appellant the night before the shooting, when a "tussle" between Strychalski and appellant got out of hand. Appellant presently attacks Strychalski as a "self-confessed liar" who gave three versions of the

events of June 23, 2009 to police officials. Appellant maintains that Strychalski had significant incentive to put the blame for the shooting on appellant rather than himself.

{¶21} Appellant also challenges Pyles' testimony, questioning Pyles' recollection that he turned his cash, drugs, and cell phone over to Strychalski, even though Pyles testified that appellant was the one holding the gun. He notes that Pyles gave a second statement to police about the robbery and shooting after being assured he would not be charged with drug trafficking.

{¶22} The record reveals that appellant took the stand in his defense, essentially countering the State's theory of the case by portraying Strychalski as the perpetrator. Appellant maintained that during the drug buy Strychalski pulled a gun from his sweatpants pocket and ordered Pyles to turn over all the drugs. Appellant claimed to be surprised by the robbery, following which he started to run, before being tackled by Burns, who was physically larger than him. He then told the jury that as Burns was on top of him, Strychalski intervened in the scuffle, ultimately shooting Burns. Appellant presently maintains that his version of events correlates with the physical evidence of Burns being shot on the very top of his head.

{¶23} Despite these varying versions of events, and differences in details between Strychalski and Pyles, both of whom admittedly were involved in illegal drug activities, we recognize that the jurors, as the firsthand triers of fact, were patently in the best position to gauge the truth. It is worth reiterating, inter alia, that David Taylor, who described himself as appellant's friend and who apparently was not facing charges for his limited involvement, clearly testified that he heard appellant announce his regret for shooting Burns in the head.

**{¶24}** Upon review, we find the jury did not clearly lose its way and create a manifest miscarriage of justice requiring that appellant's conviction be reversed and a new trial ordered.

**{¶25}** Appellant's First Assignment of Error is therefore overruled.

II.

**{¶26}** In his Second Assignment of Error, appellant contends the jury's conviction for appellant's murder of Burns is inconsistent with the convictions for aggravated robbery of Burns and Pyles, and that the trial court committed reversible error in denying a mistrial on that basis. We disagree.

**{¶27}** In essence, appellant, noting that the jury did not convict on aggravated murder, contends that because the lesser offense of murder as instructed in this case lacks the element of "while committing or attempting to commit, or while fleeing immediately after committing or attempting to commit, aggravated robbery," the jury's overall result is inconsistent and a mistrial was warranted.

**{¶28}** Our standard of review for evaluating a trial court's decision to grant or deny a mistrial is abuse of discretion. *State v. Graewe,* Tuscarawas App.No. 2007 AP 10 0070, 2008-Ohio-5143, ¶ 46, citing *State v. Sage* (1987), 31 Ohio St.3d 173, 182, 510 N.E.2d 343. In order to find an abuse of discretion, we must determine the trial court's decision was unreasonable, arbitrary or unconscionable and not merely an error of law or judgment. *Blakemore v. Blakemore* (1983), 5 Ohio St.3d 217, 219, 450 N.E.2d 1140. Generally, "[i]nconsistency in a verdict does not arise out of inconsistent responses to different counts, but rather inconsistent responses to the same count." *State v. Gardner*, Montgomery App. No. 21027, 2006-Ohio-1130, ¶ 33, citing *State v.*

*Adams* (1978), 53 Ohio St.2d 223, 374 N.E.2d 137; *State v. Lovejoy* (1997), 79 Ohio St.3d 440, 683 N.E.2d 1112. Furthermore, an inconsistent verdict may very well be a result of leniency and compromise by the jurors, rather than being caused by jury confusion. *State v. Fraley*, Perry App.No. 03CA12, 2004-Ohio-4898, ¶ 15, citing *United States v. Powell* (1984), 469 U.S. 57, 105 S.Ct. 471, 83 L.Ed.2d 461. See, also, *State v. Ballard*, Cuyahoga App.No. 88279, 2007-Ohio-4017, ¶ 17.

{¶29} In addressing appellant's motion for mistrial following the jury's verdict, the trial court reasoned as follows:

{¶30} "As It relates to the arguments made by counsel, the Court, while it may not necessarily agree, finds that, in fact, there are theories, obviously the Court allowed for the lesser included offense of murder to be submitted to the jury, the State was in agreement with that, the Defense had requested it. I raised questions at the time. But, nevertheless, in thinking it through, there is arguably the situation where a robbery takes place and thereafter unrelated, at least in the minds of the fact finders, to the aggravated robbery, an incident occurs reaching a murder. So that it wasn't during the commission of the aggravated robbery or immediately thereafter, enough of a break being found to have existed." Tr. at 530.

{¶31} Upon review of the aforesaid, and bearing in mind the potentiality for juror leniency or compromise, we hold the trial court's denial of the motion for mistrial on the allegation of inconsistent verdicts was not arbitrary, unreasonable or unconscionable.

{¶32} Appellant's Second Assignment of Error is therefore overruled.

III.

{¶33} In his Third Assignment of Error, appellant argues he was deprived of due process of law based on alleged prosecutorial misconduct. We disagree.

{¶34} A conviction will be reversed for prosecutorial misconduct only where it is clear beyond a reasonable doubt that, absent the prosecutor's comments, the jury would not have found the defendant guilty. *State v. Benge*, 75 Ohio St.3d 136, 141, 661 N.E.2d 1019, 1996-Ohio-227. Furthermore, isolated comments by a prosecutor are not to be taken out of context and given their "most damaging meaning." See *Donnelly v. DeChristoforo* (1974), 416 U.S. 637, 647, 94 S.Ct. 1868, 40 L.Ed.2d 431. Generally, a prosecutor's conduct at trial is not grounds for reversal unless that conduct deprives the defendant of a fair trial. *State v. Loza* (1994), 71 Ohio St.3d 61, 78, 641 N.E.2d 1082. Furthermore, juries are presumed to follow and obey the limiting instructions given them by the trial court. *State v. DeMastry*, 155 Ohio App.3d 110, 127, 799 N.E.2d 229, 2003-Ohio-5588, ¶ 84, citing *State v. Franklin* (1991), 62 Ohio St.3d 118, 127, 580 N.E.2d 1.

{¶35} Appellant's concerns focus on the prosecutor's calling of Ashley Dorr, a juvenile placement officer, who briefly checked on appellant at his mother's residence earlier on the day of the shooting of Burns. Appellant first maintains that calling Dorr at all was simply an attempt by the prosecutor to cast appellant's character in a bad light by suggesting he had a juvenile record. However, given Dorr's recollection that Strychalski was at the residence with appellant, it was not improper for the State to present evidence that the two young men were together in southwest Canton the day of the murder, possibly planning the staged drug deal.

{¶36} Appellant also takes specific objection to the prosecutor's question to Dorr, on re-direct, concerning the reason that juveniles who are released from the Community Corrections Facility ("CCF") are periodically supervised. Dorr started to respond: "Fear for the community. We don't want to send kids ***." Tr. at 239. At that point, the trial judge sua sponte cut the answer off and instructed the jury to disregard. Id.

{¶37} We note that earlier on direct examination, Dorr had simply identified herself as a family court employee; it was defense counsel that thereafter brought out that Dorr was a court placement officer and that appellant had been a juvenile resident of CCF for several months. See Tr. at 236-237. Upon review, and in light of the trial court's curative instruction, we do not conclude the prosecutor's questioning of Dorr, assuming, arguendo, it was improper, would have prejudicially affected appellant's substantial rights. *Loza,* supra.

{¶38} We therefore find no reversible error based on the basis of prosecutorial misconduct.

**{¶39}**   Appellant's Third Assignment of Error is therefore overruled.

**{¶40}**   For the foregoing reasons, the judgment of the Court of Common Pleas,

Stark County, Ohio, is hereby affirmed.


By: Wise, J.

Edwards, P. J., and

Farmer, J., concur.


_____

_____

_____

JUDGES

JWW/d 0112

IN THE COURT OF APPEALS FOR STARK COUNTY, OHIO
FIFTH APPELLATE DISTRICT


STATE OF OHIO                          :
                                       :
    Plaintiff-Appellee             :
                                       :
-vs-                                   :            JUDGMENT ENTRY
                                       :
JOHN WESLEY FRAZIER                     :
                                       :
    Defendant-Appellant            :            Case No. 2010 CA 00042


For the reasons stated in our accompanying Memorandum-Opinion, the judgment of the Court of Common Pleas of Stark County, Ohio, is affirmed.

Costs assessed to appellant.


_____

_____

_____

JUDGES